Good morning. May it please the Court, my name is Deirdre Mokas. I'm with the Federal Public Defender in Tucson, Arizona, and I represent Appellant Mauricio Limon-Robles. I would like to reserve five minutes for rebuttal, please. This Court should reverse the District Court denial of the § 2255 for two reasons. First, the District Court clearly made its decision by relying on clearly erroneous factual findings that are rebutted by the record. Second, the District Court was clearly erroneous in weighing the evidence. When making its decision, the District Court erroneously relied on presumed existence of alleged repeated statements made in court and under oath. Specifically, the District Court found that Mr. Limon had repeatedly given a birth date. The Court said that it was changing its ruling because of the belief that the date of birth that Limon-Robles gave over and over again was March 14, 1976. And that's the same date of birth he gives again in 2003. Can I ask you a question on the, he chose not to testify at his § 2255 hearing, is that correct? Yes, Your Honor. All right. May either the District Court or this Court consider his failure to testify or his failure to explain the prior statements in evaluating the evidence? Because, I mean, it's not a trial in the sense that it would be a jury trial or something along, you know, in a criminal proceeding. It's a § 2255. Your Honor, it is very closely tied in with the criminal matter, so I would say that no, the Court did not consider it. Well, I guess what authority do you have for the fact that we couldn't consider it? I don't have anything to cite for you right now, Your Honor. However, I would urge the Court to consider the fact that Mr. Limon was very confused and so that his testimony would have added nothing. His confused statements are what got into this situation. And so him testifying just wasn't going to add anything to the other credible evidence that already existed. Well, I'm not comfortable with that sort of speculation in terms of that. I mean, there are things in the evidence. I know there was something about he had that scar on his head and all of those things. But I guess the question that I would have, if obviously the mother testified about there was a – she had a birth certificate and she testified about when she registered and the Court noted that there were some inconsistencies about that. It would seem to me that in order to prevail, since you're asking us, to me, on some level, to reweigh the evidence that the District Court heard, that the fact that there was a birth certificate, that that would have to be conclusive evidence of the fact that he was born on that date. Well, not just the birth certificate, but also the credible evidence that the mother gave, the credible testimony. The District Court found that she testified credibly, and the Court – Well, the District Court did say – the District Court didn't think that she was lying, but that doesn't mean that – but the District Court did notice inconsistencies about – she said she registered his birth a short period after, and the actual date was a couple years after. So the District Court did notice that – I mean, you could say that you believe someone, but that doesn't mean that they're correct. Well, the District Court made its ruling – I mean, do you understand the distinction that I'm making? I could believe that you're telling me the truth to the best of your knowledge, but that still doesn't mean that I believe that you've conclusively proven a point, that you're correct on that point. I understand that, but the District Court made its decision after she had given the mistaken date of the registration. And just going to the registration, I think that a mother focuses on the birth date, not on the date that the child is registered. My daughter was born a year ago today. I couldn't tell you what date she was registered, and that was within the past year. Whereas Mr. Limon's mother, it was 20 years ago that that – plus years ago that that birth certificate was registered, and it wasn't done in anticipation of litigation. So while the birth certificate was registered a year and seven months, and she was mistaken about that, even knowing that she was mistaken about that, the District Court found that she was still credible. Well, it found that she was credible, but then decided oddly – and I understand I'm using words in an almost impossible sense – decided that she was credible, but decided not to believe her. I mean, the District Judge made a mistake in a sense. He commented on the evidence in a very sort of clean and obvious way without having heard all the evidence. After he'd heard all the evidence, he changed his mind. I have a hard time understanding why the District Court changed its mind. I understand that there were some statements by Mr. Limon, and that those statements came in through the probation officer. However, they are what they are. They are his confused statements. One of the things that the District Court relied upon – I guess I'm having a hard time getting to where you want to get me without completely reweighing the evidence. And that's – you know, if I had been in the District Court, I might have come to a different conclusion if I were sitting there. But sitting in an appellate capacity, I see that the District Court was confronted with certain conflicts in the evidence, certain discrepancies, and reached a certain conclusion. And there's a saying that, you know, trial courts do what they do because they are there and they see the evidence. Appellate courts do what they do because we're not there. And so I – you know, we can't reweigh – you know, we didn't see – you know, this is the same judge that I guess – it's actually the same judge that had seen your client originally, correct? That is correct. And then had followed the whole thing through. So it's seeing the people, it's seeing the witnesses, it's noting, you know, there's certain timing as to your client was there, you know, didn't contest any of this for a long period of time, made certain statements to probation that – indicating when he started using drugs and there was inconsistency. Then there was evidence about height and all of that. And then at the end of the day said, well, I don't think you've carried your burden. Well, the district court based that final ruling on the idea that Mr. Limon had constantly given this March 14, 1976 date throughout. However, the record shows clearly that he didn't give a date throughout. What he did do is at his May 1999 plea hearing, he stated he was 22. Well, with that 76th birth date, he would have been 23. In February 2003, at his plea and admission hearing, he said he was 20. He would have been 26 with a March 14th birth date. So when he's asked – Well, there is testimony in the record, too, about that he told the officer a specific birth date and the officer remembered that date because it was the same birth date as his son or something like that. And that is the only evidence that there is that Mr. Limon gave that date. No one after that could say, yes, he gave me that date. Let's just say that's the only evidence and the court believed that. Why wouldn't that be enough? Because the evidence shows that he was confused, that he really didn't know how old he was, that you could tell him the date and he'd say yes or he'd accept it or not deny it. But on the other hand, you'd ask him at the same time, well, how old are you? 20? 23? 22? He was just, I guess, trying to be compliant and give an age. And he really didn't know how old he was. Okay, but let's say that it is confused and there are different explanations that are given. Do you agree that you had the burden of proof to show that he was a juvenile? Yes. All right, and let's just say it's just flat-out even. If you've got the burden of proof, do you lose? Well, I would say that it wasn't flat-out even. Assuming that it was, let's just say, assuming that it was, do you lose then? Well, there is information that we would have to show it by a preponderance. So 50-50. You lose. So you've got to push it. You've got to tip it just a little bit. Right. And I would submit that the documentary evidence and the credible testimony of the mother did push it because what came in through the probation officer that bothered the district court was just Mr. Limon's statement, his confused statement of how old he is. And the documentary evidence of the birth certificate that the mother got, which later was bolstered by the birth certificate that was provided independently by the Mexican consulate, which shows the same birth date of September 22nd, 1981, certainly outweighs what Mr. Limon said consistently, inconsistently. And so I think that we certainly do show more than 51% that. What does the, what you just mentioned, the fact that he later produced a certified copy of the birth certificate from the Mexican consulate, what does that add to his case, if anything? Well, Your Honor, we have the mother who got a copy of the birth certificate, and later on the Mexican consulate independently provides a copy of the birth certificate from a different registrar. What does that add to his case? It's the same birth certificate, isn't it? It's the same birth certificate, but it shows if there was any lingering doubt that there was some sort of fraud by the mother, that there wasn't because the Mexican consulate provided it independent of the mother. And so if anybody had that in the back of their mind. But the judge's ruling was not on the basis of any fraud, I don't think. So in that context, it really doesn't add anything to the weight of the evidence on his side, does it? No, the second birth certificate doesn't, because when the district court looked at the second birth certificate, the district court said it's already been admitted, it would just be cumulative, and it doesn't add anything. I think in the back of one's mind, it does bolster, but it doesn't add anything. It shows the same date, and it is the same information. Other than that, the certified birth certificate, did Mr. Limon Robles have the opportunity to present all the evidence he wanted to during the 2255 hearing? I certainly think more evidence could have been presented, but again, it would have been cumulative. Maybe school records could have been obtained. You're not alleging that there was something that wasn't presented, other than that the only thing that you're saying was the certified, right? Yes, that the Mexican consulate initially did not provide a birth certificate, but provided it after the hearing had concluded. You know, I think we've got your argument well in hand. Why don't we hear from the other side, and then if you have rebuttal, you'll have an opportunity. Thank you. May it please the Court, my name is Bruce Fergus. This is the United States Attorney on behalf of the government in this case. I think Judge Fletcher has actually hit on the crux of this case, which is that the district court was confronted with the necessity to make a determination of facts. Not Judge Fletcher, though. I'm sorry. You're Judge Fletcher. You're Judge Callahan. Well, but let me, let's just put it the other, let me play the devil's advocate here with you and say, well, why shouldn't we find that the mother's testimony, which the district court found credible, and the birth certificate create a preponderance of the evidence that Limone Robles was born in 1981? Well, because we need to recognize the sequence of events, which was, as has been commented, when the judge found her, quote, credible, and actually I don't believe he used that term, what he said was there's nothing in your cross-examination at this point that shows that she's lying or not credible. That was before any of the government evidence was ever heard. And so he, even in that comment, left the door open to saying, well, this is where we are at this point, but after I hear from the government's evidence, the outcome may be different. And that's, in fact, exactly what happened. In his ultimate oral findings. So you're basically saying this is trial judges talking when they shouldn't. Frankly, yes. It was a little bit of shooting from the hip early on and before the government's evidence was heard. But actually, I think that that, in a sense, demonstrates the propriety of this process, ultimately, in that here's a judge who, if anything, had a tendency to believe the defendant's mother and evidence. But after he had actually heard what the government presented to him, he was compelled to find, even against that inclination, that, in fact, the burden had not been carried. He said, when I look at this, these consistent statements which this defendant has made under circumstances where he had no reason to say anything different over a period of years, and particularly the things that he said to Lee Ann Gibbons, the first probation officer doing the 1999 PSR, where he's very freely saying, oh, I started using that drug when I was 20 years old, which obviously had to be in the past tense, and that he could not possibly have been a juvenile then. Did the government make a motion to dismiss at the conclusion of the mother's testimony in the 2255? It had been made before then, but that's when it reiterated its desire to have that kind of a ruling, and the judge denied it. So you basically invited the judge to tell you his impression of the mother's testimony. Well, the motion to dismiss was not based on her credibility at that point. But I think you just told me that you renewed the motion. Well, I would have to look at the exact wording, but the primary arguments at least that were made were those that had been raised beforehand, which were the procedural ones about the timeliness and the statute of limitations. So those are at least the primary grounds. But even assuming that he made a quasi finding, if you will, or an interim finding, the bottom line is that after he heard all the evidence, he was compelled, even against that initial inclination, to say, no, you have not met your burden. And to reverse that, you would basically have to depart from your appropriate role, which is deference to the fact-finding of the district judge, who was sitting there eyeballing his witnesses. And he said yes, to the best of her ability, I believe she testified. But her ability obviously was limited. For example, in her testimony, she initially said, oh, I registered him a week after he was born, when in fact it was a year and nine months afterwards that the registration took place. So even in her recollection, there are clear problems. But doesn't the fact that he later came up with a certified copy of the birth certificate bolster her testimony, corroborate it? Are you referring to the Rule 60 motion where it came in later? No. As the district judge found, he had already had the information in that birth certificate and accepted it to the degree that it was there. But because of the reasons you state about the problems with the recollection, he kind of discounted that date, didn't he? But as I pointed out in the answering brief, to add a certification by some other official that, yes, this is the same birth certificate doesn't add anything to the validity of the facts which are in the birth certificate, which is the real issue. When was he born? And just to say, oh, we found this record, doesn't add to that. Nobody covers this in their brief, but doesn't the fact that you get a certified record from a foreign jurisdiction almost make the facts stated in there incontestable? I'm sorry, almost what? When you get a certified document from a foreign jurisdiction, doesn't that certification make the facts stated in the document almost incontestable? No, I don't believe that's correct, because what the authentication does is simply to lay the groundwork for admissibility. And actually, I did address it. There is both treatise and case law to the effect that all that does is allow prima facie admissibility. It doesn't tell you anything about the weight or the reliability that you should ascribe to the information in that document. It's simply enough to get it before the court and to overcome confrontation or hearsay objections, but it doesn't tell you what is really important in this case. How does that weigh against all this other evidence? Well, if there were a non-rebuttable presumption that a certified copy established a person's date of birth as the date on that, would the appellant have a good argument in this case that they presented a preponderance? Because you didn't really assail the birth certificate that much. If it were, in fact, non-rebuttable, sure, because it wouldn't make any difference what else we presented. But that's why I think that the case law, Watteau, and the others that I presented made the point that this is simply prima facie, and therefore it is open to be rebutted. And, in fact, there are several cases in the briefs that say, okay, well, you presented this particular birth certificate, but first of all, it's kind of questionable because it was obtained belatedly, but when you weigh it with all the rest of the evidence, I, as the district court judge, am finding that that does not persuade me. Of course, you know, one piece of evidence that Judge Zapata did not weigh, I have to assume he was aware of this because he presided over both the 1999 proceeding and the later proceeding, but the records show that this fellow grew four inches in those three years, right, which you would almost, you know, almost certainly presumptively indicate that he was an adolescent. That's exactly why this court should defer to what the district court found. He didn't say anything about that, Judge Zapata. Because it wasn't argued to him. Yeah, but it was before him because he presided over both proceedings, and the defendant was before him in both proceedings, and the record shows, the probation officers, those records show that at one time in 1999 he was 68 inches, and in 2002 he was 72 inches. But all we have are those cold documents. We have no background information about how those measurements or those numbers were obtained. For example, was it in fact – What are you saying now? The probation workers are not trustworthy? I'm just saying that we don't know whether maybe the, by their own testimony, confused defendant told him, I'm now six feet. If he is that confused about his birth weight, he could just as well be confused about his height. We don't have testimony saying, oh, there is a scale on the wall where they routinely go and check him, and they did that, and this is where it came from. Now, this is argued for the first time in appeal, correct? Exactly. So the district court, there wasn't any opportunity for that to be developed in the record. That's correct. And this is where we get into the problem of simply plucking out these numbers, because as I pointed out in the brief, there is a subsequent record, which goes back to the 2003 PSR, which says, oh, you're five feet eight. Now, we don't know where that number came from either, whether that's simply extracted from the original, whether it came from the defendant, or anything else. So the mere fact that there's this inconsistency doesn't tell us anything about the reliability of that, especially when if they wanted to make a point of that, they should have argued it. They should have put those studies. Again, we don't even know the basis of the studies. Does this apply to Hispanics or well-nourished Nordic Americans where this kind of growth spurt occurs? I guess I could ask the public defender how tall our client is, but I won't. This is a puzzling case to me. I've never seen one quite like this. I mean, here we have a mother who says, my son was born on X date. She brings a birth certificate with her that says that he's born on X date. And if she's right, and if the birth certificate is right, and if this birth certificate is his birth certificate, you lose. The only way the district judge can be right is if this birth certificate is either a totally fraudulent document or it's a birth certificate for somebody else. Isn't that right? The district court judge said that he believed that she testified to the best of her ability. I'm asking you. I'm not asking you what the district court said. Okay, well. I mean, in order for you to be correct or for the district court to be correct that this is an inaccurate statement of his birth, either the document has to be fraudulent or it has to be describing somebody else. Right? Or the mother's recollection a year and ten months afterwards may have been confused. For example, we find from her testimony that she had six different children. But the certificate states the date of birth. A year and nine months after the alleged birth of this child. I don't know what her motivations were or her recollections. So, again, this is why a. But if the certificate actually had him born at the. If, in fact, he was born closer to the time of the certificate, he's even younger. I mean, so that doesn't help you. If that were so, it would also lend more credibility to the birth certificate because it would be more contemporaneous and more likely to be accurate. But here's where I'm stuck and why this is a hard case for me. Either this is a fraudulent certificate or there is somebody else who's being described in that birth certificate. I think those are the only two possibilities. Well, fraudulent in the sense of incorrect. I would not ascribe bad motives to the mother, but incorrect, yeah. Well, okay. But, again, I would suggest that this is where we get into a real problem because these are exactly the kinds of conflicts in credibility and weighing that are given to the district court. No, but the. All right, but I agree with that, but the question I think Judge Fletcher is raising because of the analysis he makes, does that mean that the district court was clearly erroneous in its finding? And the answer is clearly not because all of the case law, none of it says that a birth certificate, even a contemporaneous one, is conclusive. It doesn't say that. Even contemporaneous American birth certificates are only prima facie evidence subject to contradiction by other evidence. And that's exactly what happened here. It was contradicted. And so we have the defendant himself in all of these circumstances where he had no reason to give anything else, consistently saying 3-14-76. And I would point out that it wasn't just to the arresting officers, which the defense counsel has insisted upon. The testimony from Mr. Gonzales, who brought the A file, also pointed to other documents where, in the course of the removal proceedings, there had been obtained from him, in one case under oath, further information, again consistent, 3-14-76. So those other documents from the A file were also derived from the defendant. So basically what the defense wants to say is assume that he was in error this one time rather than being correct all those other times. And just on the face of it, if we just look at the defendant himself, that doesn't make any sense. If he was confused, why was it that he was not confused this time when he's looking backward and saying, oh, I was 16 or 17 when he has apparent difficulty in computing dates and months, rather than when he was contemporaneously saying, this is my birth. So we also suggested alternatively that the district court did not rely on the procedural grounds of the untimeliness of the petition and the fact that it is basically a collateral attack, which are closely connected with one another. And we would maintain that those are viable alternative grounds for upholding the judgment. Although this court chose not to rely on those grounds, this court could have decided to do so. So I'll answer questions on that or anything else that you wish me to. Thank you very much. First, regarding the birth certificates that the government cites in its brief, Mr. Limon's birth certificate was registered one year, seven months. The government's cases, Cazares-Moreno was 30 years after the birth and was overcome by other overwhelming evidence, according to the court. Matoy, 21 years after the birth, again overcome by overwhelming evidence. Pinto-Vidal, 10 years. And there was also a contemporaneous Mexican birth certificate, which was found to be almost conclusive evidence of her Mexican birth. And then, Leacacos was 46 years after the birth. I would just reiterate that Mr. Limon did not consistently say, I was born March 14th, 1976. You represented him during the 2255. Yes, I did. That during the hearings, when he was under oath, and asked him. Well, he doesn't testify at the hearing, though. So you're saying during the hearing he was under oath. He doesn't testify at the hearing. I'm sorry. I'm talking about his plea hearing in May of 1999, his February 2003 hearing. Okay. Plea and admission and his March 2003. He gave dates that were inconsistent with March 14th, 1976, and inconsistent with each other. He's just kind of all over the place. And regarding the procedure, there are at least four reasons why the court could hear the case. One, that it had ongoing jurisdiction due to the fact that he was now going to be punished for the supervised release. And also, it relates to the court's subject matter jurisdiction and whether this could have been heard by the court in the first place. Second, that even if there is a one-year procedural bar, that would be an equitable bar and would be overcome by the absolute bar of if there is no subject matter jurisdiction, then the case cannot be before the district court. And that is that he was a juvenile, so that the court would not have had subject matter jurisdiction absent the certification. And fourth, or third I think I'm up to, is that this was newly discovered evidence in the fact that Mr. Limon was so confused. Although he had a duty to consult his own memory, it wasn't of any use. And so that due diligence was exercised. And when his confusion was discovered by the probation officer during her interview in 2003, then the clock started running and then it was timely filed. And fourth, that there are exceptions for extraordinary circumstances to excuse the lack of compliance with the one-year deadline. And again, juveniles were given special protections. That's essentially what this is all about. And the court considered that he was a young man from Mexico, potentially a juvenile, and that it would be difficult as a juvenile from Mexico to petition the court. And that Mr. Limon's responses also show that he was confused, that he gave inconsistent answers. There was also information in the record that he had suffered a head injury, that he had a six-inch scar on his head from his injury, and that he banged his head against the wall at night when he slept. So he could not have been convicted of this adult crime. And it would be a fundamental miscarriage of justice to hold him to it. I don't know if you have any other questions of me. Thank you both sides for a very helpful argument.
judges: Tashima, W.fletcher, Callahan